Argued April 5, reversed and remanded September 8, 1972

# PECO, INC., *Respondent, v.* HARTBAUER TOOL & DIE CO. ET AL, *Appellants.*

500 P2d 708

*Lee Davis Kell,* Portland, argued the cause for appellants. On the briefs were Kell & Alterman.

*Lee A. Hansen,* Portland, argued the cause for respondent. On the brief were Jones, Brown, Hansen & Steenson.

McALLISTER, J.

The sole question on this appeal is whether an Equipment Lease between plaintiff Peco, Inc., as lessor, and the defendant Hartbauer Tool & Die Co., as lessee, is a security interest as defined by ORS 71.2010 (37). We hold that it is.

There is no dispute about the facts. The lease, dated July 22, 1970, provided for the lease by Peco to Hartbauer of an electronic cutting machine, complete with all standard equipment, for a term of 36 months for rentals aggregating $26,399.96. The rental included an $8,000 "lease deposit" to be paid by work performed by Hartbauer for Peco and the balance was to be paid in regular monthly instalments of $511.11, each. The lease gave Hartbauer an option to purchase the equipment at any time after July 1, 1973, if not then in default, for a purchase price of $1,000. Peco never filed a financing statement under the Uniform Commercial Code.

On April 28, 1971, Hartbauer, being insolvent, executed an assignment for the benefit of creditors to defendant Glen E. Dodge. The assignee held a liquidating auction on August 18, 1971, and intended to sell the machine leased by Peco to Hartbauer. Peco brought this suit to enjoin the assignee from selling the machine for the benefit of Hartbauer's creditors. The trial court held that the lease was not a security

interest and enjoined the sale. The assignee appealed and we reverse.

ORS 71.2010 (37) provides standards for determining whether a lease is truly a lease or was intended as a security interest. That section provides:

> " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * * Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' * * *. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

At first glance the provisions of the above section may be somewhat confusing, probably because they are stated in the inverse order of importance. However, upon a careful reading of the entire section it is clear that the first question to be answered is that posed by clause (b)—whether the lessee may obtain the property for no additional consideration or for a nominal consideration. If so, the lease is intended for security. If not, it is then necessary to determine "by the facts of each case" whether the lease is intended as security and, in making that determination, the fact that the lease contains an option to purchase "does not of itself make the lease one intended for security."

■ The cases construing the above section have uniformly held that if the lessee, upon compliance with the lease, has the option to purchase the property

for no additional consideration, or for a nominal consideration, the lease is a security interest as a matter of law. *In re Vaillancourt,* 7 UCC Rep 748, 759, Bank. No. 69-151-ND (D Me, March 26, 1970); *In re Alpha Creamery Co., Inc.,* 4 UCC Rep 794, 797, Bank. No. 29,264-B (WD Mich, June 8, 1967); *In re Oak Manufacturing, Inc.,* 6 UCC Rep 1273, 1276, Bank. No. 69B341 (SD NY, October 27, 1969). See, also, 1 Anderson, Uniform Commercial Code (2d ed) 145 § 1-201 : 112; 1 Gilmore, Security Interests in Personal Property 339 § 11.2. If the $1,000 option price in the lease involved in this case was nominal, the statute requires a holding that the lease was intended for security.

In the cases decided under UCC 1-201 (37) nominal consideration may be more than a few dollars. The more frequently used test is a comparison of the option price with the value of the property at the time for exercising the option. *In re Washington Processing,* 3 UCC Rep 475, Bank. No. 202, 891-WB (SD Calif, June 3, 1966); *In re Universal Medical Services, Inc.,* 8 UCC Rep 614, Bank. No. 70-456 (ED Pa, December 4, 1970); *In re Alpha Creamery Co.,* supra; *In re Oak Manufacturing, Inc.,* supra. See, also, *In re Crown Cartridge Corp.,* 220 FS 914 (SD NY 1962) (deciding same question under prior statute). The courts also hold that the consideration is nominal if the option price leaves the lessee no "sensible alternative" to the exercise of the option or if completing the purchase is the "only sensible course". *In re Washington Processing,* supra; *In re Alpha Creamery Co.,* supra; *In re Vaillancourt,* supra. In some cases there has also been a comparison of the option price with the original list price or with the total rentals required under the lease.

We agree that the best test is a comparison

of the option price with the market value of the equipment at the time the option is to be exercised. Such a comparison shows whether the lessee is paying actual value or acquiring the property at a substantially lower price.

■ In this case there is proof that at the end of the lease the value of the equipment would be about $10,000. Using this figure, the option price is ten per cent of the value of the equipment at the time the option is to be exercised. We think, under these circumstances, the option price of $1,000 was nominal and the reported cases so indicate. In *In re Crown Cartridge Corp.*, supra, the court held an option price of about 20 per cent of the fair market value was nominal. In *In re Washington Processing*, supra, the court held an option price of $1,350 compared to a market value of some $7,500 to $10,000 was nominal, and in *In re Oak Manufacturing, Inc.*, supra, an option price of 13 per cent of the market value was held to be nominal.

Since our finding that the option price of $1,000 was nominal determines this case, we need not consider whether the other facts of the case would require the same holding.

The decree of the circuit court is reversed and the case is remanded for the entry of a decree in accordance with this opinion.