In re FALK FARMS, INC., Debtor.

PAC WEST AUCTION COMPANY, Appellant,

v.

FALK FARMS, INC., Appellee.

Jerry STRASHEIM, Appellant,

v.

FALK FARMS, INC., Appellee.

BAP Nos. OR 87–1501–AsMeJ, OR 87–1954 and OR 88–1084.
Bankruptcy No. 687–06104–W12.
Adv. No. 687–5006–W.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 19, 1988.

Decided June 23, 1988.

Keith Y. Body, R.A. Carlson, McGavic & Boyd, P.C., Eugene, Or., for appellants.

Wilson C. Muhlheim, Hershner, Hunter, Moulton Andrews & Neill, Eugene, Or., for appellee.

## OPINION

Before ASHLAND, MEYERS and JONES, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge.

Pac West Auction Co. appeals from the bankruptcy court's judgment that a lease with an option to purchase was a lease intended as security and that the interest of Pac West Auction Company in the collateral was adequately protected. Jerry Strasheim, an assignee of Pac West Auction Company, appeals the bankruptcy court's order confirming Falk Farms' Chapter 12 plan. We affirm.

## FACTS

In 1985 Falk Farms, Inc. defaulted on its obligation to First Interstate Bank, which held a security interest in the equipment at issue. The equipment was sold to the appellant Pac West Auction Co. in a foreclosure sale. However, the equipment never left Falk Farms' possession, and on July 29, 1985, Pac West and Falk Farms entered into a lease agreement with an option to purchase. At the time of the agreement, Falk Farms was expecting a loan from Farmers Home Administration (FmHA) that it intended to use to repurchase the equipment. The lease term was for one year with the termination date of August 28, 1986. Falk Farms agreed to pay $6,000 per month, half of which was to be credited to the option purchase price if the option was exercised. The original option purchase price was $132,500.

In May of 1986, Pac West and Falk Farms orally extended the agreement for an additional three months, extending the termination date to October 28, 1986. The debtor did not exercise its option by October 28, 1986. However, Falk Farms made payments for the November and December rent which Pac West accepted. There were no verbal or written agreements concerning how the November and December payments should be applied. In late December Falk Farms told Pac West that it had been turned down by the FmHA for financing and that it could not make any more payments.

In January of 1987 Pac West began to pick up the equipment, and on January 23, 1987, Falk Farms filed a Chapter 12 petition. Subsequently, Falk Farms filed a complaint to compel turnover of the property and a complaint to determine the validity and extent of the lien. Falk Farms contended that the lease agreement was intended as a security agreement, granting them a right to redeem all of the equipment.

The bankruptcy court found that the lease was intended as a security agreement and ordered Pac West to turnover the equipment to Falk Farms. The court deferred ruling on the amount of the redemption price. Pac West duly filed its motion for leave to appeal and notice of appeal. Pac West then filed a motion for relief from stay for lack of adequate protection. The court denied the motion by finding that a significant equity cushion existed protecting Pac West's interest in the collateral. Pac West appealed this decision as well.

On December 7, 1987 the bankruptcy court confirmed Falk Farms' Chapter 12 plan. Jerry Strasheim, an assignee of Pac

West, timely appealed the court's order confirming the plan. Strasheim presents the same issues in his appeal as were presented in Pac West's appeals. The reason for his appeal was to preserve his claim to the ownership of the equipment since the plan treated him as a security interest holder and not as an owner. All three appeals have been consolidated by the Bankruptcy Appellate Panel.

## ISSUES

Whether the bankruptcy court erred in finding that the lease agreement was intended as a security agreement granting redemption rights to Falk Farms.

Whether the bankruptcy court erred in finding that there was an equity cushion protecting Pac West's interest in the collateral.

## DISCUSSION

A determination of the factors to consider in finding that a lease was intended as a security agreement is a question of law which will be reviewed de novo. However, the application of these factors to determine intent is a factual question which will be reviewed under clearly erroneous standard. *In re Acequia,* 787 F.2d 1352, 1357 (9th Cir.1986).

Property rights in bankruptcy are determined by reference to applicable state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Waterkist Corp.,* 775 F.2d 1089, 1091 (9th Cir.1985); *Johnson v. First National Bank,* 719 F.2d 270 (8th Cir.1983). The applicable state law in this case is O.R.S. 71.2010(37) which defines security interest. Section 71.2010(37) provides in part:

> ... whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal

consideration does make the lease one intended for security.

*See also Wentworth & Irwin v. United States National Bank of Oregon,* 80 Or. App. 500, 723 P.2d 1016 (1986); *Burton Compressor Corp. v. Stateline Forest Prod.,* 79 Or.App. 626, 720 P.2d 386 (1986); *All–States Leasing Co. v. Ochs,* 42 Or.App. 319, 600 P.2d 899 (1979). The facts in this case are not in dispute.

The court in *All-States* established a list of factors to be considered in finding that a lease was intended as a security agreement. They are:

1. Whether the lessee is given the option to purchase the equipment, and if so, whether the option price is nominal.

2. Whether the lessee acquired any equity in the equipment.

3. Whether the lessee is required to bear the entire risk of loss.

4. Whether the lessee is required to pay all charges and taxes imposed upon ownership.

5. Whether there is a provision for acceleration of rent payments.

6. Whether the property was purchased specifically for lease to the lessee.

7. Whether the lessor was a "financing lessor" whose principal concern is to be secured adequately.

The bankruptcy court found all of the factors listed above except for the acceleration of rent payments clause and the nominal purchase price. Pac West purchased the equipment from Falk Farms so that Falk Farms could pay its debt; the equipment was leased back to Falk Farms immediately; the equipment never changed possession; Falk Farms was granted an option to purchase; the option price was reduced by $3000 each payment; the lessee bears the risk of loss; the lessee pays all charges and taxes; the lessee pays all insurance; the agreement includes a disclaimer of warranties.

■ Pac West does not object to the court's findings, but argues that the lease is not a security agreement under *All-States* since the court could not find all of

the elements. The list contained in *All-States* was not meant to be exhaustive, and a court is not required to find every single element in order to find that a lease was intended to be a security agreement.

■ In addition to the elements set out in *All-States*, Pac West urges this panel to consider other factors—whether the parties expressly stated in the lease that it was intended as a true lease and whether the lessor took an investment tax credit for the leased equipment, *American Standard Credit, Inc. v. National Cement Company*, 643 F.2d 248 (5th Cir.1981); whether or not the lease ran for the entire useful life of the equipment, *In re Marhoefer Packing Company, Inc.*, 674 F.2d 1139 (7th Cir.1982); whether or not there is a large initial deposit or advance payment in the nature of a down payment, *In re Loop Hospital Partnership*, 35 B.R. 929 (Bankr. N.D.Ill.1983); whether the lessee has a renewal option at more than nominal amounts, *Sanders v. Commercial Credit Corporation*, 398 F.2d 988 (5th Cir.1968); and whether or not the lessor has the right to re-sell the leased equipment after default and seek a deficiency judgment for the balance due under the lease, *John Deere Company v. Wonderland Realty Corp.*, 10 UCC Rep. 1278, 38 Mich.App. 88, 195 N.W.2d 871 (1972).

■ The bankruptcy court is not required to consider all the above mentioned factors. The court had sufficient facts before it to determine whether the lease was intended to be a security agreement. Also, it would be inappropriate to consider all these factors here because of the unique circumstance surrounding this case. Falk Farms was the original owner of the equipment with the lessor purchasing the equipment at a foreclosure sale. At the time of the lease, Falk Farms was expecting a loan from FmHA with which to exercise the option to purchase. Pac West knew from the start what Falk Farms wanted to do. These were the reasons why the term of the lease did not run for the entire useful life and why Falk Farms kept the equipment and paid rent even after the harvest season. The option purchase price was not nominal, and there was no large initial deposit or advance payment in the nature of a down payment for the same reasons. The bankruptcy court did not clearly err in finding that the lease was intended to be a security agreement.

■ We agree with the bankruptcy court's detailed analysis of the redemption price in its memorandum opinion. By orally extending the contract when the contract itself required a written modification and by accepting the rents after October 28, 1986, Pac West extended the entire lease/option agreement, including the time for exercise of the option until December 28, 1986. At that time the redemption price of the equipment was $81,500 (original option purchase price of $132,500 minus $51,000 which was applied for 17 months to reduce the option purchase price).

■ The bankruptcy court decided the interest rate to be 9% by using O.R.S. 82.010(2)(a). Section 82.010(2)(a) states that the rate of interest on all moneys after they become due is 9% if the parties have not otherwise agreed to a rate of interest. *See Kleiner v. Randall*, 74 Or.App. 27, 701 P.2d 458 (1985). The parties had not agreed to any specific rate of interest in this case.

■ The accrued interest, therefore, as of August 6, 1987 was $4,439.89 (9% on $81,500 for 221 days), raising the redemption price to $85,939.89. The liquidation or sale value of the collateral at the time of the hearing was $120,000 with a depreciation rate of 10% per annum. The equipment was depreciating at the rate of $1,000 a month. Consequently, the value of the equipment at the time of the judgment was between $115,000 and $116,000. Since the debtor was not required to make any more payments after the contract terminated, the final redemption price was $85,939.89, and the court correctly found that Pac West was adequately protected by an equity cushion.

We affirm all three orders.